(February 11, 1904.)

## STATE v. COLLETT & IRELAND.

[75 Pac. 271.]

DESCRIPTION OF PROPERTY IN INFORMATION—WHEN SUFFICIENT—CONFLICTING INSTRUCTIONS—NEW TRIAL NOT GRANTED WHEN.

1. An information that charges the larceny of one horse is not repugnant to section 7679 of the Revised Statutes, for want of sufficient description.

2. An instruction charging that the possession of recently stolen property is in law a strong criminating circumstance tending to show guilt unless the evidence and the facts and circumstances

proved show that they may have come honestly into possession of the same, is not error, neither is it in conflict with a charge that possession of stolen property recently after the theft, if unexplained, is a circumstance tending to show the guilt of the possessor. Still, in this case, if the jury believe from the evidence that the defendants were placed in possession of the property by others, and were honestly employed to deliver said property into the possession of another, and were, at the time of their arrest, openly and publicly carrying out the conditions of their employment, this is a satisfactory account of the possession of the animal in question.

3. Where there is a substantial conflict in the evidence on the material issues involved, a new trial will not be granted.

(Syllabus by the court.)

APPEAL from the District Court of Fremont County. Honorable J. M. Stevens, Judge.

Defendants were convicted of the crime of grand larceny and appealed from the judgment and order overruling the motion for a new trial.    Judgment affirmed.

Briggs & McCutcheon and Chalmers & Jones, for Appellants.

This is a prosecution upon a charge of grand larceny, under section 7048 of the Revised Statutes of Idaho, the allegation being that the defendants "did feloniously, etc., steal, etc., one horse, then and there being the personal property of S. H. Davis." The accusation being of the larceny of "one horse," and the possession thereof being admitted, the defense was and is that the defendants came honestly and innocently into possession of the animal, and that neither of the defendants was at the residence or on the range or near the horse of S. H. Davis at the time it was taken from his possession, but that they were both at other places. The verdict is not supported by the evidence, for the following reasons and in the following respects: (a) There is no evidence connecting or tending to connect the defendants or either of them with the larceny of the horse described in the information herein other than the fact or circumstance that the defendants were found on their way

to Virginia City, Montana, with said horse in their possession, and the manner in which they came into possession of the said animal is fully explained by unimpeached and uncontradicted testimony, being the explanation of the defendants themselves, corroborated by that of other witnesses and circumstances. It may be observed here that there is in the record no direct or positive evidence whatever even tending to contradict the explanation by defendants of their possession of the stolen horse. Evidence in explanation of such possession may fall short of a satisfactory explanation, and yet be sufficient to acquit. If it creates a reasonable doubt, it practically rebuts the presumption of guilt. (3 Rice on Evidence, p. 734, citing *Clackner v. State,* 33 Ind. 412; *Way v. State,* 35 Ind. 409; *Smith v. State,* 58 Ind. 340; *Lunsford v. State,* 29 Tex. App. 205, 15 S. W. 204; *Holley v. State,* 21 Tex. App. 156, 17 S. W. 159; *Reveal v. State,* 27 Tex. App. 57, 10 S. W. 759; *Johnson v. State,* 5 Lawson's Criminal Defenses, 606; *Saltillo v. State,* 5 Lawson's Criminal Defenses, 625.) "Unexplained possession of recently stolen property does not raise a legal presumption of guilt, and shift the burden of proof upon the accused, but is merely a fact from which guilt may be inferred." (*State v. Hale,* 12 Or. 352, 7 Pac. 523; 6 Lawson's Criminal Defenses, 1048; *People v. Antonio,* 27 Cal. 404; *Ballamy v. State,* 35 Fla. 242, 17 South. 560; *Conkwright v. People,* 35 Ill. 204; *Hoge v. People,* 117 Ill. 35, 6 N. E. 796.) "The bare possession of property recently stolen is not conclusive evidence of guilt. Especially is this so of property of the kind involved in this case." (*State v. Seymour,* 7 Idaho, 257, 61 Pac. 1033.) Upon the insufficiency of the information the authorities cited by appellants are cited and commented upon in the opinion.

Attorney General John A. Bagley, for the State.

Upon the sufficiency of the information the authorities cited are nearly all cited in the opinion. Presumption from unexplained possession of recently stolen property is a presumption of law. Mr. Greenleaf makes the following statement: "Possession of the fruits of crime recently after its com-

mission is *prima facie* evidence of guilty possession, and, if unexplained either by direct evidence or by the attending circumstances, or by the character and habits of life of the possessor or otherwise, it is taken as conclusive." (1 Greenleaf on Evidence, sec. 34; *State v. Kelly,* 73 Mo. 608; *State v. Good,* 132 Mo. 114, 33 S. W. 790; *Belote v. State,* 36 Miss. 96, 72 Am. Dec. 163; Blashfield's Instructions to Juries, sec. 330.)

STOCKSLAGER, J.—The defendants were jointly charged with a felony; they were convicted and each sentenced to serve a term of three years in the state penitentiary. A motion for a new trial was made which was overruled by the court, from which order defendants appeal; they also appeal from the judgment. The information, after the preliminary statement, charges: "That Samuel L. Collett and Samuel Ireland, on or about the thirteenth day of June, A. D. 1903, at the county of Fremont, in the state of Idaho, did commit the crime of grand larceny, committed as follows, to wit: Did willfully, unlawfully, and feloniously steal, take, lead, drive and carry away one horse, then and there being the personal property of S. H. Davis, contrary to the form, force and effect of the statute in such case made and provided, and against the power, force and dignity of the state of Idaho." Then follows the allegation that defendants had an examination before an officer authorized to hold such examinations, and were held to answer. To this information a demurrer was interposed by the defendants: "1. That the information does not state facts sufficient to constitute a public offense. 2. That the information does not substantially conform to the requirements of section 7679 of the Revised Statutes of Idaho, in this: That the information is not direct and certain as to the particular circumstances of the offense charged, and that no description of the property alleged to have been stolen by the defendants is given in the information by which the said property could be identified."

This demurrer was overruled by the court, which is assigned as error. The information charges that the defendants, naming them, on or about a certain date did willfully, unlawfully

and feloniously steal, take, etc., one horse, the property of S. H. Davis. We think this language is sufficient to charge a public offense, and the demurrer, so far as this ground was concerned, was properly overruled. Counsel for appellant in their brief and also in the oral argument insist that the description of the property is insufficient as contained in the information, and that for that reason the demurrer should have been sustained. A large number of authorities are cited by appellant in support of this contention and we have examined them with interest and care. It is insisted that the information does not comply with the provisions of sections 7677 and 7679 of the Revised Statutes. Section 7677 says: "The indictment must contain: 1. The title of the action specifying the name of the court to which the indictment is presented, and the names of the parties; 2. A statement of the acts constituting the offense in ordinary and concise language, and in such manner as to enable a person of common understanding to know what is intended."

Section 7679 says: "It must be direct and certain as it regards: 1. The party charged; 2. The offense charged; 3. The particular circumstances of the offense charged, when they are necessary to constitute a complete offense."

We think a careful reading of the information will disclose that every provision of these two sections were complied with. The defendants were notified that they were charged with the larceny of one horse, the property of S. H. Davis; that said charge is lodged in the district court of Fremont county, and on or about the time the larceny was committed. As we view it, all the elements of the crime are charged to these defendants, and hence the information was a statutory charge of larceny.

In *Territory v. Shipley*, 4 Mont. 486, 2 Pac. 313, it is said: "Where in an indictment the stolen property is described as sundry bank bills issued on the authority of the United States, usually known as 'greenbacks,' amounting in all to the sum of $589, such description is not sufficient to support the indictment or enable the jury to determine that the stolen chattels

were the same referred to in the indictment.    The number, kind and denomination of the bills ought to be given or a good and sufficient excuse for not doing so set forth in the indictment."

*People v. Ellenwood,* 119 Cal. 266, 51 Pac. 553, was an indictment charging the defendant with making and passing a fictitious check. *People v. Ward,* 110 Cal. 369, 42 Pac. 894, was an indictment charging the defendant with the crime of bribery.    It was held that an indictment which charged that defendant did "give a bribe" to a certain supervisor with intent to corruptly influence him in a certain matter was not sufficient.    *United States v. Cruikshank et al.,* 92 U. S. 542, 23 L. ed. 588, was an indictment which in general language charged the defendant with an intent to hinder and prevent citizens of the United States of African descent therein named, in the free exercise and enjoyment of the rights, privileges, immunities and protection granted and secured to them respectively as citizens of the United States, and of the state of Louisiana because they were persons of African descent, and with the intent to hinder and prevent them in the several and free exercise and enjoyment of every, each, all and singular the several rights and privileges granted and secured to them by the constitution and laws of the United States; does not specify any particular right the enjoyment of which the conspirators intended to hinder or prevent, are too vague and general, lack the certainty and precision required by the established rules of criminal pleading, and are therefore not good and sufficient in law.

*State v. Dawes,* 75 Me. 51, says: "An indictment for larceny which describes the property stolen as 'one case of merchandise of the value of six dollars and contained no excuse for the want of a more full and definite description is not sufficient."

*Mervin v. People,* 26 Mich. 298, 12 Am. Rep. 314, says: "Information for larceny of one hundred and thirty-five dollars of the property, goods and chattels of C." Held, bad for uncertainty.

"In *Stolenwork v. State,* 55 Ala. 142, it is held that 'a yearling of the value of six dollars' without the addition of any other

descriptive words is not a sufficient description of the animal stolen in an indictment for grand larceny under the act approved February 20, 1875." The above is the language of the syllabus.

Mr. Justice Stone, speaking for the court, says: "Any animal in the second year of its growth is a yearling. The description in the present indictment is too indefinite. It may include many animals, for the stealing of which the act approved February 20, 1875, does not provide. If the indictment had charged that the animal stolen, describing it, was an animal of the cow kind, it would have been sufficient."

In *State v. Brookhouse,* 10 Wash. 87, 38 Pac. 862, that court held that an information which charges that defendant did feloniously take, steal, drive or lead away twenty-five head of cattle is not defective because of the disjunctive conjunction.

An information which charges that defendant stole twenty-five head of cattle is defective for uncertainty of description of the property. As to the latter proposition, Justice Hoyt and Scott dissent. The opinion was written by Justice Stiles, concurred in by Justices Dunbar, C. J., and Andrews, J.

*State v. Morey,* 2 Wis. 494, 60 Am. Dec. 439. The court held that an indictment charging stealing of meat is bad for vagueness and uncertainty. The term applies not only to the flesh of animals used for food, but in a general sense to all kinds of provisions. The supreme court of North Carolina in *State v. Patrick,* 79 N. C. 655, 28 Am. Rep. 340, quotes with approval the Wisconsin case. This case involved the theft of one pound of meat, valued at five cents. Mr. Justice Faircloth, speaking for the court, says: "Such articles have more specific names in commerce and in the country which ought to be employed in criminal proceedings."

In *Porter v. State,* 39 Tex. 388, the syllabus says: "An indictment charging theft of one certain trunk or chest containing various articles of clothing, jewelry, etc., is bad for uncertainty in description of the property stolen. The word 'trunk' or 'chest' are not synonymous, and the indictment being in the alternative is bad for want of certainty."

It will be observed that, of all these cases cited by counsel for appellants in support of their contention that the demurrer should have been sustained, but three of them contained a charge of the larceny of livestock of any character, and the description in neither of them can be compared with the information in the case at bar, which distinctly charges the defendants with the larceny of a horse.

In the case of *State v. Rathbone,* 8 Idaho, 161, 67 Pac. 186, this court held that an information charging the larceny of two mares without further description was sufficient.

The attorney general cites a large number of cases, among them: *People v. Freeman,* 1 Idaho, 322; 12 Ency. of Pl. & Pr. 983, 986, cases cited; *Perry v. State,* 37 Ark. 54; *People v. Sanford,* 64 Cal. 227, 28 Pac. 106; *State v. Gooch,* 60 Ark. 218, 29 S. W. 640; *People v. Pico,* 63 Cal. 50; *People v. Montieth,* 73 Cal. 7, 14 Pac. 373. Many other authorities are cited by the attorney general in support of the position that the information in this case sufficiently describes the property alleged to have been stolen, and an examination of them discloses that the courts have almost unanimously held that a description of the character before us for consideration has been held to be sufficient.

After a careful review of all the authorities cited we are of the opinion there was no error in overruling the demurrer.

Counsel for appellants urge that the evidence was insufficient to justify the verdict or warrant the judgment; he says: "There is no direct or positive evidence whatever even tending to contradict the explanation by defendants of their possession of the stolen horse. The mere statements of defendants explanatory of their possession if reasonable and not improbable is sometimes sufficient." This is true, and should appeal to the justice and reason of the jury in their deliberations; indeed, that, with other questions of fact, are the things the jury are called upon to determine. In the case at bar it is evident the jury was not satisfied with the explanation. When the possession is admitted and it is shown that the property was stolen, it becomes the peculiar province of the jury to deter-

mine the fact as to whether or not the explanation is satisfactory. This finding of the jury will not be set at naught by this court, unless it is shown by the evidence that such finding is erroneous and unwarranted.

A careful reading of the evidence in this case taken in connection with the circumstances connecting the defendants with the possession of the horse, their statement to the officer after their arrest, to the effect that they took the horse because they were "hard up" and wanted to go to Canada to start anew; the statement of defendant Collett to witness Secrist that "he was going to Canada this fall after delivering the stock to Potter, and he was coming back this fall and then was going to Canada and meet Potter there, and there would be a whack-up between them."

Hyrum Dudley testifies that Collett told him that he was taking the horses to Monida to turn over to the M-Y and Mr. Jenkins. Samuel Harrop, the sheriff of Fremont county, testified that Collett said in his presence and in the presence of Mr. Soule, the county attorney, Ed Little and Dick Costell that they received the horses from Walt Lewis, and were hired to drive them to the other side of Virginia City and turn them over to Perry Potter; that they were received by them at the stockyards at St. Anthony and that Lewis hired them to drive them out there; Collett said he thought the whole thing was rotten and he thought it was Walt Lewis' fault.

Many of these statements are disputed by the defendants. If the evidence on behalf of the prosecution was accepted by the jury as truthful, then the defendants, and especially Collett, made contradictory statements, and the jury was at liberty to say that the possession of the horse was not satisfactorily explained. It will not do to say that when the defendants make statements that if true would show that their possession was rightful the jury must accept such statements as conclusive, until the prosecution overcomes them by evidence of same character. Men engaged in the commission of crime, and especially larceny, are not very liberal advertisers of their acts, and the prosecution would certainly be hampered beyond help,

if it had to overcome every statement of the defendant as to how he came into the possession of the property alleged to have been stolen.

The jurors in passing upon the question of the possession of the property were at liberty to consider everything said by the defendants either before or after the arrest, and if after hearing all the evidence they were satisfied beyond a reasonable doubt that the possession was obtained otherwise than as stated and was wrongful and felonious, this court should certainly not disturb their verdict.

What we have said on this feature of the case applies with equal force to the question of the sufficiency of the evidence to sustain the verdict of the jury. A careful investigation of the evidence does not convince us that the jury was unwarranted in the verdict.

Counsel for appellant call our attention to the case of *State v. Seymour,* reported in 7 Idaho, 257, 61 Pac. 1033, and insist that under the rule laid down in that case these defendants should be granted a new trial; in that case it is stated that: "The defendant explained his possession of said animal by his own testimony and that of the witness Bruce, and if the facts as stated by himself and the witness Bruce are true, the defendant is not guilty of the crime of which he was convicted; the evidence is not contradicted in a single particular and neither the defendant nor Bruce was impeached." That is not true in the case at bar; the defendants contradicted themselves as to how they came into the possession of the horse or horses at St. Anthony. It is true they say they were brought to the corral and delivered to them, but tell different stories as to who brought them there; that in their various conversations they mention three different parties as the one who brought the horses to the corral; it is not probable this court will ever extend the rule established in the Seymour case, but construing that authority in the most favorable light for the defendants they are not entitled to a new trial on the ground that they accounted for their possession of the horse.

At the request of the defendants the court gave this instruction: "While possession of stolen property recently after the theft, if unexplained, is a circumstance tending to show the guilt of the possessor, still in this case, if the jury believes from the evidence that the defendants were placed in possession of the property by others and were honestly employed to deliver said property into the possession of Perry Potter, and were at the time of their arrest openly and publicly carrying out the conditions of their employment, this is a satisfactory account of the possession of the animal in question and removes every presumption of guilt growing out of such possession, and the jury should acquit the defendants."

The court gave nineteen instructions at the request of defendants, which cover every question and are certainly favorable to them, or they would not have been requested.

It is insisted by counsel for appellants that instruction No. 3 given by the court at the request of the prosecution is in conflict with instruction No. 1 given at the request of defendants. This instruction is as follows: "In this case, if the jury believe from the evidence beyond a reasonable doubt that the horse described in the information was stolen, and that the defendants were found in the possession of the horse soon after it was stolen, then such possession is, in law, *a strong criminating circumstance,* tending to show the guilt of the defendants, unless the evidence and the facts and circumstances proved show that they may have come honestly into the possession of the same."

We can see no conflict in defendant's request No. 1 and the state's request No. 3. From an examination of all the instructions given by the court, we think they fairly state the law, and the defendants have no cause for complaint.

Counsel for appellants insist that even though this court finds that Collett was properly convicted, there was no evidence on behalf of the prosecution connecting Ireland with the crime, hence a new trial must be granted to both defendants. We cannot give our assent to this contention. While the evidence connecting Collett with the crime is much stronger than against Ireland, yet the jury was not satisfied with Ireland's explana-

tion of his relations with Collett, and evidently believed they were jointly interested in the crime.   We think they were justified in this conclusion.

Whenever the plural is used in this opinion in referring to any statements made by the defendants it is intended to refer to defendant Collett, who, it is shown by the record, did all the talking, but generally in the presence of defendant Ireland.

We find no error in the record and the judgment is affirmed.

Sullivan, C. J., concurs.

Ailshie, J., concurs in affirmance of the judgment as to the defendant Collett, but as to the sufficiency of the evidence to sustain the verdict and judgment against defendant Ireland, he expresses no opinion.